## UNION CITY REALTY & TRUST COMPANY *v.* WRIGHT.

1. In a sale of personalty to be delivered in the future, where as a part of the consideration the vendee promised to pay a debt owed by the vendor to a third person, neither that person nor those claiming under him acquired equitable rights against the vendee in virtue of the promise, beyond the rights of the vendor through whom they claimed.

2. In an equitable action based on a promise of the character just mentioned, it appeared that the vendor made certain misrepresentations as to the character of the property sold, and himself breached covenants made by him in the contract of sale, which were of such character that the vendor could not enforce the promise made by the vendee. The promise by the vendee did not contemplate payment of a promissory note made by the vendor to the third person, and an equitable action by an assignee of such a note against the vendee to compel payment of the note would not lie.

3. The vendee was a corporation, and while in process of organization the representations referred to in the second headnote were made to prospective purchasers of a majority of the capital stock, with the view of selling the personalty and other valuable property. An agreement was made on the strength of the representations, the proposed purchasers of stock participating at the organization meeting. At this meeting all the capital stock that was issued was subscribed by the vendor and issued to him, and he transferred a majority thereof to the proposed purchasers of stock. One of them was elected president of the corporation, and, acting for the corporation, he received from the vendor a deed conveying the personalty mentioned in the preceding notes and containing the covenant of the vendee on which the action was based. *Held*, that in thus dealing with the corporation the vendor was acting in his own interest as opposed to that of the corporation; and his knowledge as to the misrepresentations and breach of the contract by him, and existence of the note sued upon, at the time of delivery of the deed, would not be imputed to the corporation.

4. The relevancy of certain evidence which was admitted over objection does not appear, but its admission would not require a new trial, in view of its character.

AUGUST 18, 1916.  REHEARING DENIED SEPTEMBER 14, 1916.

Equitable petition. Before Judge Freeman. Campbell superior court. June 8, 1915.

Mrs. Anna M. Wright instituted an action against the Union City Realty and Trust Company, a corporation, to compel the company to pay a certain promissory note for three thousand dollars, which had been executed by J. H. Harris to another corporation called the Union City Brick Company, and duly transferred by that company to plaintiff. On the trial the judge directed a verdict for the plaintiff. The exception is to a judgment refusing a new trial. The petition contained allegations as just indicated, and others as to the ground upon which it was sought to hold the defendant liable for the amount of the note, as follows: On May 12, 1909, Harris subscribed to four thousand dollars par value of the capital stock of the Union City Brick Company, and gave that company the note in question in part for such subscription. On

the same day that company sold and indorsed the note to the plaintiff. On May 18, 1909, Harris executed a deed conveying certain property to the defendant, which contained, among others, the following clause: "I also convey my subscription for four thousand dollars ($4,000.00) of stock in the Union City Brick Company, which the company agrees to pay for according to my contract." The defendant accepted the deed and went into possession thereunder. Harris became insolvent immediately after executing the deed, and before maturity of the note the brick company also became insolvent and was placed in the hands of a receiver. The above-quoted clause between Harris and the realty company inures to the benefit of plaintiff, and defendant in equity and good conscience ought to pay the note. Plaintiff has not been guilty of laches, is without remedy at law, and prays judgment for the amount of principal, interest, and attorney's fees provided in the note.

The defendant filed an answer, which was subsequently amended. It denied liability and any relation with the plaintiff, and alleged, among other things, the following: The entire clause included in the deed in regard to the purchase of the stock subscription contract was: "I also convey my subscription for four thousand dollars ($4,000.00) of stock in the Union City Brick Company, which the company agrees to pay for according to my contract; and also all the royalties derived from a twenty [year] lease I hold from said Brick Company. I agree to transfer my interest in said lease on the back of same to the Union City Realty and Trust Company." The following were the circumstances under which the clause was included in the deed: When closing the negotiations which resulted in the deed, which was about one month before the date of the deed and before the date of the note held by plaintiff, Harris stated to defendant that he had agreed to subscribe for forty shares, of the par value of $100 dollars each, of the capital stock in the Union City Brick Company, not then organized; the subscription not to be paid for in money, but ten shares were to be paid for in wood, and the remaining thirty shares to be paid for by applying certain royalties which the brick company would be due him for a twenty-year lease of certain land included in that sold to defendant, which provided for a monthly royalty according to the number of bricks manufactured on the land, and a minimum sum for each

month during the entire term of the lease, whether or not any bricks were manufactured, the amount of the royalties being greatly in excess of the stock subscription. He proposed to put the stock-subscription contract in the sale, to be paid for as represented, and to be the property of the defendant. After all the negotiations had been completed and nothing remained except to execute the deed to defendant, and pending the interval before signing the deed, Harris signed the note in question, for which he received the thirty shares above mentioned, without disclosing the fact to defendant, and finally executed the deed containing the clause as set out in the answer, without informing the defendant of any change in the circumstances; and defendant accepted the deed without notice that the note had been given, and on the faith of the truth of the representations of Harris above set out. In accepting the deed containing the clause it was not intended to agree to pay the note which had not been known to exist; nor to pay the stock subscription except in the manner Harris had represented that it was to be paid. As a matter of fact Harris never had any lease contract with the brick company or contract for royalties, and did not convey any to defendant, and wholly failed to comply with the obligations imposed upon him by the terms of the clause in the deed. Under the circumstances the covenant by defendant expressed in the deed was one to pay for stock in the manner as detailed by Harris to be delivered to defendant, and had no reference to the assumption of payment of the note held by plaintiff. Harris could not in law or equity compel defendant to pay the note made by him; much less could the brick company, or the plaintiff as transferee of the brick company, claiming under Harris, compel it to do so; for no one can avail himself of any benefits under the contract through Harris when he had no rights thereunder.

At the trial the plaintiff relied, for proof of a subscription contract for stock in the brick company, (1) upon a paper signed by J. H. Harris and L. M. Wright, in which Harris was designated as party of the first part and Wright "and his associates" (naming two other persons) were parties of the second part. It purported to lease certain land owned by Harris to the other parties for the manufacture of bricks, and expressed numerous cross-obligations upon the part of the other parties in regard to locating and operating on the land a plant for the manufacture of bricks.

The paper was dated April 8, 1909, and stated that it should be operative until April 15, 1909; but there was a clause giving the second parties the right of renewal for a term of twenty years, if they did so on or before April 15th. After covering in detail matters as indicated above, the paper provided: "It is mutually understood and agreed between the parties hereto, and made a part of this lease and contract, that the said party of the second part and his associates shall have the privilege and right to transfer and assign all their right, title, and interest into and under this contract to a corporation to be hereinafter organized by the said parties of the second part for the purpose of manufacturing and selling brick on the property herein described and at the plant herein noted, said corporation to be known as the Union City Brick Company, and to have a minimum paid-in capital stock of ten thousand dollars ($10,000.00). It being agreed and understood that said L. M. Wright is to be the General Manager of said Brick Company when organized. Said first party is to have $1,000.00 of stock in said company, same to be paid for in wood and clay. It is also agreed by said L. M. Wright and associates that said J. H. Harris is to have $3,000.00 of stock in said company, for which said L. M. Wright or his company agrees to accept the notes of J. H. Harris, payable on or before Feb. 27th, 1910, at 7% interest. It is also mutually agreed and understood between the parties hereto, that, whenever the capital stock of said company is increased from 15,000, the said J. H. Harris is to have the option of taking his pro rata share of such increase." (2) The plaintiff relied also upon evidence which showed that the foregoing paper was in the possession of Harris when he made the representation before referred to, in the negotiation of the sale upon which the deed to the other corporation was predicated; and that Harris refused to sign, when tendered to him, a proposed renewal contract. The date of this tender of the proposed renewal paper was not shown. It was sent to Harris in an undated letter. All the allegations of the petition were proved as alleged. The evidence touching the organization of the realty company (the defendant) and the circumstances attending the sale to it and its acceptance of the deed was as follows: Harris owned certain land in which he had interested F. G. Boatright and S. G. Slack, as prospective purchasers. They agreed upon terms of purchase of interest therein, and to organize a corporation

to carry out the enterprise. Instead of taking conveyance of land, it was determined to let Harris convey all the land to the corporation and receive therefor all the stock and immediately transfer to Boatright and Slack specified numbers of shares of stock, amounting in the aggregate to 51 per cent. of the stock. The charter was obtained in April, and the organization took place on the 18th day of May, on which date the deed by Harris to the realty company was signed. At the organization meeting, stock in the corporation was formally subscribed by Harris. All the stock that was issued was issued to Harris, who immediately transferred 51 per cent. of the entire stock in the corporation to Boatright and Slack severally. At the same time Slack was elected president, and Harris vice-president. Harris also executed the deed to the corporation and delivered it to Slack, who received it as president of the corporation. The deed and all papers relating to the organization had been previously prepared, and the meeting at which all occurred as just indicated lasted about thirty minutes. The representations which were alleged in the defendant's answer to have been made by Harris to defendant were made to Boatright and Slack about one month before the organization meeting, at which time, on the faith of such representations, they agreed to become purchasers and members of the enterprise. In all other respects there was evidence to support all the allegations made in the answer. The evidence was without conflict upon all material points, except on the question as to how the thirty shares of stock in the other corporation (the brick company) were to be issued to Harris by that company and paid for. Harris testified that they were to be paid for in royalties to be received under the lease contract; and Wright and Baxter, for the plaintiff, testified that there was no agreement to allow them paid for in that way. There was no denial of the testimony of Harris, Boatright, and Slack that Harris represented to the latter two that in his subscription contract with the brick company Harris was to pay for the stock in clay and royalties under the lease contract, and not in money.

J. F. *Golightly* and *Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.

*Barry Wright* and *Little, Powell, Smith & Goldstein,* contra.

ATKINSON, J. 1. The two corporations, the Union City Realty and Trust Company and the Union City Brick Company, were

organized in the same community about the same time, and both related to development of property owned by J. H. Harris, who was the original promoter of the first-named company, and to a lesser extent interested also in the other company. To avoid confusion, it is necessary to bear in mind that there were two corporations, and that the realty company was the defendant, which, on account of having received a deed from the brick company containing a certain clause, the plaintiff attempted to hold it liable for a note given by Harris for stock in the brick company, which note that company transferred to the plaintiff. It thus appears that the defendant was not the maker of the note or otherwise a party to it. The sole basis of the alleged equitable right of the plaintiff, as transferee of the note, to compel payment by the defendant was the promise of the latter implied by accepting the deed from the brick company, which contained the clause: "I also convey my subscription for four thousand dollars ($4,000.00) of stock in the Union City Brick Company, which the company agrees to pay for according to my contract; and also all the royalties derived from a twenty [year] lease I hold from said Brick Company. I agree to transfer my interest in said lease on the back of same to the Union City Realty and Trust Company." Under the circumstances, if the plaintiff, in virtue of being transferee of the note, can claim against the defendant any equitable right based on the clause in the deed, it is only such right as Harris could exercise against the defendant. This proposition is well supported. In Ellis *v.* Harrison, 104 Mo. 270 (15 S. W. 198), it was held that under the common law as recognized in the State of Missouri, as well as in virtue of the statute, a person for whose benefit an express promise is made in a valid contract by others may maintain an action thereon in his own name, but that the beneficiary of such a contract does not acquire a better standing to enforce it than that of a contracting party. In the course of the opinion, it was said: "Whatever right of action a third party to such an agreement may acquire by virtue of its terms against either of the directly contracting parties, it is clear that on principle such right can not be broader than the party to the contract (through whom the right of action is derived) would have in event of its breach. To state this in another form: The right of action by any outside beneficiary, for whose advantage a contract is made between two persons, is entirely subordinate to

the terms of the contract as made. Such beneficiary can not acquire a better standing to enforce the agreement than that occupied by the contracting parties themselves. Crowe v. Lewin (1884), 95 N. Y. 423; Wheat v. Rice (1884), 97 N. Y. 296. The plaintiff's rights in the case before us flow from the agreement between Mr. Harrison and Mr. Ellis Jr., and are confined within the scope of that agreement interpreted according to the rules of law. If the parties, when it was made, understood and intended the expression "mercantile debts" (as used therein) to exclude the notes in question, the plaintiff can not enlarge its meaning for them. They were the contracting parties. It is their contract to be enforced, and plaintiff has no such relation to the subject as permits him to assert the contract different from what they mutually agreed it should be." The same principle was also recognized and applied in the case of Clay v. Woodrum, 45 Kans. 116 (25 Pac. 619), the facts of which showed a contract between two parties, in which each had made covenants. A third person, who was a creditor of one of the contracting parties, was seeking to enforce an equity or right he claimed by virtue of the contract between the two parties, which his debtor had made; and the defendant set up as a defense that the other party to the contract had not performed his covenants in the contract, and therefore the defendant was not liable under the contract to the other contracting party, and as the rights of the third person were dependent upon the rights of the party to the contract through whom he claimed, he could not recover, because such other party could not. In the course of the opinion, it was said: "The third party, however, who avails himself of such contract, and claims under its provisions, is subject to the defenses arising out of the contract between the original parties." It was further said: "Woodrum is claiming the breach of a promise made to Elwood, which was based on conditions to be performed by Elwood; and how can he recover unless those conditions have been performed? He is in no better position to enforce the contract derived through the promise to Elwood than Elwood himself would be." Among other cases applying these principles are the following: Hargadine-McKittrick Dry Goods Co. v. Swafford Dry Goods Co., 65 Kans. 572 (70 Pac. 582); Green v. McDonald, 75 Vt. 93 (53 Atl. 332); Crowell v. Hospital, 27 N. J. Eq. 650; Keller v. Ashford, 133 U. S. 610 (10 Sup. Ct. 494, 33 L. ed. 667).

47

2. Inasmuch as the plaintiff could enforce only such rights as Harris could enforce against the defendant, we may now consider what was Harris's right. In this connection see *Union City Realty & Trust Co.* v. *Wright,* 138 *Ga.* 703 (76 S. E. 35). This leads to consideration of his subscription contract for stock in the brick company, and the circumstances attending the sale thereof to the realty company. The contract with the realty company, as described by the clause in the deed, was that Harris should convey his "subscription for four thousand dollars ($4,000.00) of stock" in the brick company, for which the realty company "agrees to pay . . according to my [Harris's] contract." The contract also purported to convey "all the royalties derived from a twenty [year] lease I hold from said brick company," which Harris agreed to transfer by indorsement. The purchase-price of all the property mentioned as the consideration of the deed also entered into the consideration moving Harris to make the above transfers. There was extrinsic evidence to the effect, that at the date of the deed to the realty company Harris had executed the note sued on and received a certificate for thirty shares of stock of the par value of $100 each; and that prior to execution of the note and issuance of the stock, while negotiating with prospective purchasers of the stock in the realty company, Harris stated to them that he had a subscription contract for $4,000 of stock in the brick company, under which, without the payment of any money, he was to receive the stock in consideration of certain clay and certain royalties to be paid him by the brick company under a lease contract which he had made with the company, which contemplated the establishment of a brick manufactory on the leased premises, and as a part of the proposed sale he would put in the subscription contract and transfer the lease. The prospective purchasers agreed with Harris to take interest in all his holdings, including the stock-subscription contract as represented by him, and to organize the realty company as a means of carrying out the enterprise. After such agreement Harris executed the note and received the stock as above mentioned, and shortly thereafter the realty company was organized and the deed executed by Harris to it, containing the clause with reference to stock subscription in the other corporation as before indicated, without disclosing to the other proposed purchasers of stock the facts of his having executed the note or received the 30 shares of

stock. As a matter of fact Harris did not have such a lease contract with the brick company as he had stated, and was not entitled to any royalties from that company, and had not transferred any such to the realty company. Treating the representations made by Harris as having been made to the realty company, it is clear that he could not compel that company to pay money as promised in the note at a specified time for the stock, when he had induced the company to take the stock subscription upon the representation that the stock was to be paid for in another way, not involving the payment of money; and when he had failed to comply with his contract in regard to the lease contract under which the royalties were to be received.

3. It was urged, however, that inasmuch as Harris had subscribed for all the stock of the realty company and all the stock was issued to him in payment for the property described in the deed, in making the deed to the realty company he was, in effect, dealing with himself, and his knowledge of the existence of the note and issuance of stock and non-existence of the lease contract and royalties represented to be payable thereunder would be imputed to the corporation, and it could not resist payment of the note on account of such conditions. The representations were made to proposed purchasers of interests in the property, in contemplation of organizing the corporation to promote the enterprise. Instead of taking deeds to the interests in the property and paying therefor and joining in the conveyance to the corporation for stock issued to them, the persons who bought interests equal to fifty-one per cent. of the property elected to let Harris convey all the property to the corporation and receive all the stock therefor and transfer to them fifty-one per cent. of stock in consideration of the purchase-price which they paid to Harris. All this was carried out at the organization meeting at which one of the purchasers became president and Harris vice-president. The president accepted the deed for the corporation when it was delivered by Harris. The purchasers, therefore, were substantially interested all the time, first, as purchasers under the executory contract; and secondly, as actual owners of the stock in the corporation; and their interests with respect to the representations made by Harris were opposed to that of Harris. Under the circumstances Harris's interest was opposed to that of the corporation, and his dealing with the corporation

was with it as a distinct entity and at arm's length. The case falls within the principle of *Peoples Bank* v. *Exchange Bank,* 116 *Ga.* 820 (3), 828 (43 S. E. 269, 94 Am. St. R. 144), where it was held: "A corporation is not to be charged with notice of facts of which its president acquires knowledge while dealing in his private capacity and in his own behalf with third persons; nor is knowledge on his part thus acquired imputable to the corporation when, acting through another official, it deals with him at arm's length as with any other individual representing himself alone." Applying this principle, the knowledge of Harris would not be imputed to the realty company; nor would that company be precluded from making the defense that the contract was not performed by Harris. *Georgia Milk Producers' Asso.* v. *Crane,* 137 *Ga.* 50 (72 S. E. 414); *Taylor* v. *Felder,* 3 *Ga. App.* 287 (59 S. E. 844).

4. The remaining grounds of the motion for new trial deal with the allowance of certain evidence over specified objections. The following questions were propounded to J. H. Harris by the plaintiff: "Wasn't your wife to have some of the stock? And wasn't your mother-in-law to have some?" Each question was objected to on the ground that an answer to such questions would be irrelevant. The objection was overruled, and defendant excepted. The further question was propounded to Harris, while a witness, "What property did you have beside that property you transferred to the Union City Realty and Trust Company?" This was objected to on the ground that it was immaterial and irrelevant, and error was assigned upon the overruling of the objection. Certain papers (known in the trial and designated as minutes of the Union City Realty & Trust Company, produced by S. G. Slack), purporting to be the originals, were offered in evidence by the plaintiff. The defendant objected to their admission, on the grounds: (*a*) "They were not certified." (*b*) "There is nothing about them to verify their correctness." The court then directed that proof that they were the minutes be made. Evidence to that effect was introduced; and the objection was renewed, on the ground that the evidence showed that the papers were not minutes but only memoranda. The court overruled the objection, and error was assigned upon the ruling. Objection was also raised to the following question propounded to J. H. Harris, on the ground that such evidence was irrelevant and immaterial: "Do you know that your wife and

mother-in-law have put up security for the payment of this claim?" The objection was overruled, and the witness allowed to answer; and error was assigned upon the ruling. The 10th ground of the motion for new trial complained of a ruling allowing the witness Slack to answer the following question: "Mr. Harris has put up collateral security or other property to protect the Greater Georgia Development Company against liability incident to this claim?" To which the witness answered: "I don't know." The objections were that it was immaterial and was in writing, if it was true.

The relevancy of most of the evidence which was admitted over objection does not appear, but its character was such that its admission would not require a new trial.

*Judgment reversed. All the Justices concur.*