The court erred in overruling the motion for new trial.
 DECIDED APRIL 21, 1942.
Jewell instituted suit against Martin for payment of an open-account balance of $159.20 alleged to be due plaintiff by defendant for feed and chicken supplies sold to defendant. Defendant answered alleging payment to plaintiff through an alleged agent, Charlie Gazaway. The jury returned a verdict in favor of the defendant. The plaintiff moved for a new trial. The motion was overruled and the plaintiff excepted, assigning error on the overruling of his motion on the general grounds only.
The evidence in substance was as follows: Jewell, who is in the chicken and feed business, sold a certain amount of chicken feed and supplies to Martin on open account. Jewell claimed that Martin was indebted to him $159.20, covering feed and supplies purchased. Martin acknowledged purchase of feed and supplies in the amount of $159.20, but alleged that payment therefor had been made by sale of chickens to Charlie Gazaway, an alleged agent of Jewell. Gazaway, testifying for plaintiff, stated in part as follows: "Mr. Jewell never authorized me to buy any chickens for him at any time without specific instructions from him. He didn't authorize me to buy any, except when he told me to. . . I did not agree to buy the chickens from him for 16 1/2 cents for Mr. Jewell. I found out he was going to move the chickens, and I knew the market was bad in Atlanta and he wouldn't get anything for them, and I came and called Mr. Jewell up, and he told me he would *Page 296 
take them. . . These chickens were termed stags on the Atlanta market. . . As to whether twelve cents was the stag price — that is what he got for them."
Martin stated in his own behalf that Gazaway contracted to pay 16 1/2 cents per pound for a consignment of chickens, although his statement as to the agency of Gazaway was as follows: "I didn't have any contract with Mr. Jewell in person. I dealt with Mr. Charlie Gazaway. . . As to whether or not I knew what Mr. Gazaway was going to do with them — well, he didn't say. . . I didn't know whether he way buying them for himself or Mr. Jewell, or who he was buying them for." Martin further testified that he sold the chickens to Gazaway when the chickens were ten weeks old; that Gazaway was to come for the chickens, but never came; that when the chickens were fifteen weeks old Martin started with the chickens to an Atlanta market but took them to Gainesville and sold them to Jewell. Martin further testified: "I never told Mr. Jewell . . . that I owed a penny of this money. . . At the time I sold these chickens to Mr. Gazaway we figured they weighed 2 1/4 pounds each. At the time they were actually delivered I picked one up out of the coop and weighed it on the scales and it weighed 5 1/4 pounds. I would call those stags. They were not bringing as much as they would have at ten weeks old. I don't know how much they lacked of bringing that amount. I don't owe Mr. Jewell $159.20 or any other amount. I don't owe him a dime. If he had taken these chickens up at the time I sold them to Mr. Gazaway I wouldn't have owed him anything, but instead I would have made $20 profit on it, and 25 pullets, and they would have been worth a right smart to me. I wouldn't have taken less than fifty cents apiece for those pullets. I never have got anything out of feeding these chickens and caring for them after I sold them to Mr. Gazaway, and I feel like I ought to have some pay for my work after I sold them to him and then had to feed them for four and a half weeks. I had to keep feeding them after I sold them to Mr. Gazaway, and I figure my work in doing that was worth one dollar per day. And I feel that Mr. Jewell owes me that sum of money. . . I had a contract with Mr. Gazaway to buy them. He is the man I sold them to. I didn't sell them to Mr. Jewell when they were ten weeks old. As to whether or not I knew what Mr. Gazaway was going to do with *Page 297 
them — well, he didn't say. He just said he would give me 16 1/2 cents a pound for them and weigh them there at the door and call for them. He said he was working for Mr. Jewell. I didn't know whether he was buying them for himself or Mr. Jewell or who he was buying them for."
The question is: was Gazaway an agent of Jewell at the time he was alleged to have bought the chickens from Martin? It will be observed from the testimony that Gazaway denied agency, and Martin said: "I had a contract with Mr. Gazaway to buy them. He is the man I sold them to. I didn't sell them to Mr. Jewell. . . As to whether or not I knew what Mr. Gazaway was going to do with them — well, he didn't say. He just said he would give me 16 1/2 cents a pound for them."
"The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." Code § 4-101. Certainly the evidence did not indicate general agency. As to the alleged special agency of Gazaway, inDiamond Hill Gin Co. v. Swift Co., 27 Ga. App. 95
(107 S.E. 350), we find: "Where one deals with a special agent he must do so at his peril and must ascertain for himself the scope and extent of the agent's authority to bind the principal." The evidence in the case at bar did not indicate that Martin made any attempt to determine from Jewell, or from any one else, the authority of Gazaway to bind Jewell in the matter of the sale of the chickens.
Judgment reversed. Broyles, C. J., and MacIntyre, J. concur.