37048. STYLES *v.* DENNARD *et. al.*

636

*Walter B. Fincher, Glyndon C. Pruitt, J. Ray Merritt,* for plaintiff in error.

*Reuben A. Garland,* contra.

TOWNSEND, Judge. █ Thomas Griggs testified in part: "I am a cab driver. My cab is operated under the name of Quick Service Trips. There were around 15 or 16 cars working from this Quick Service Trips at 929 Simpson Street. I know James

L. Dennard. He operated a taxicab under the name of Quick Service Trips, the same organization I operated under. I know Robert Thomas, a cab driver. Whether Robert Thomas had been driving for Dennard about 4 or 5 years I really don't know. I operated one automobile myself, didn't have but one car. It is true that Robert Thomas did work out of there during the time I have spoken of. There was a girl there answering the phone and she is here today as a witness. Her name is Lydia [Lillian] Griggs. I have a charter under the name of Quick Service Trips. It is registered in my name, Quick Service Trips, and this document you show me is the trade name certificate that I filed here at the courthouse which bears my name. I paid Lillian Griggs $10 a week. And Dennard didn't pay her anything. Dennard paid me $4.25 per week for operating under my name and I was to furnish the girl to answer the telephone. I guess Lillian Griggs was my agent out there, I don't know just exactly what that means; but I guess so. Dennard paid me a fee in order for her to also be his agent; I furnished her Dennard and she took phone calls for me and Dennard and worked for both of us. I am a member of the Atlanta Car for Hire Association. That is an association of taxicab drivers who operate as a unit in driving cabs in this town. I pay dues to that corporation. They authorized me and I do operate this stand which is known as the Quick Service Trips stand. I work under the auspices and under the supervision of the Atlanta Car for Hire Association. I do not hire or employ or pay the person you point out anything for driving a taxicab. I had from 14 to around 17 men who were drivers of the Atlanta Car for Hire who assembled at this stand where I had a $10 a week telephone woman. I did not own any of the cars they drove, I just own one car, myself. I don't make any money out of that car unless I drive it myself. Robert Thomas never did work for me, nor did he ever drive my car. I myself, have never directed him to go pick up passengers anywhere for me, for I was looking for passengers myself. I did not ever get any percentage out of any money that he took for operating the cab. No car was ever operated from that station that was not registered by the Atlanta Car for Hire Association. Nobody could operate from that company without having a car

registered. You couldn't drive without being registered. I know James L. Dennard, and he only has one car that is registered and authorized to be operated as a taxicab. He and I are not partners. I am only a member of the Atlanta Car for Hire Association. I did not furnish any money or have any interest in the '49 Plymouth automobile owned by Robert Thomas. He never had been at any time my servant or agent to drive my cab, nor have I authorized him to drive any vehicles for me at any time. He merely used the telephone and the telephone service that he contributed for." This testimony is undisputed, and is supported by like testimony on the part of Dennard and Harris, President of the Atlanta Car for Hire Association. When taken in connection with other undisputed facts to the effect that the plaintiff was injured in a car which did not belong to Griggs and in which he had no interest, which was driven by Robert Thomas, a man employed by Dennard but not Griggs to drive Dennard's taxicab, and in the absence of any testimony showing either that Griggs and Dennard were jointly engaged in the operation of a common business, or that either Dennard or Thomas was under the direction of or shared any agency relation with Griggs, a verdict was demanded in favor of the latter. The motion for a new trial was properly denied as to Thomas Griggs.

■ As to the defendant Dennard, the above testimony plus other undisputed evidence demands a finding that he was one of the several taxicab owners and operators, members of Atlanta Car for Hire Association, operating out of the stand and under the name of Quick Service Trips; that his automobile had received from municipal authorities a car for hire permit which allowed it to be used as a taxicab; that Robert Thomas had a taxi permit which licensed him to drive Dennard's taxicab; that he had been for a considerable time employed by Dennard to drive Dennard's.taxicab, and that he owned an automobile which was not licensed as a taxicab. The evidence is undisputed that on the day in question the plaintiff requested that a taxicab be summoned for him by telephone and shortly thereafter one arrived and he entered the taxicab owned by Dennard and driven by Thomas, with the words "Quick Service Trips" or at least "Quick something" written on it, and that the plaintiff desired

this transportation for the purpose of being taken by the Union Station to collect his baggage and then on to Buford, Georgia; that this taxicab was such a taxicab as could be legally driven to Buford, Georgia, and that Thomas was authorized by Dennard to take passengers to Buford. Thomas was unauthorized to take passengers anywhere except as agent and driver for Dennard. Thomas first drove to the stand of Quick Service Trips, and Styles testified without objection or contradiction: "In arriving there Robert Thomas sort of pulled up to the side [and] went into the place with me. I had a conversation with Lillian Griggs. I did discuss with her the price of the trip going to Buford. The driver said $20 and Lillian Griggs said around $15 and there was a discussion between her and the driver and they finally reconciled their differences as to what they were going to charge me and later came to an agreement to charge $12. There was a discussion about changing the taxicab. I stood around for a few minutes, the driver told me to wait inside. Thomas made these remarks in the presence of myself and Lillian Griggs and this other woman. He said he had a boot in the tire and he would like to change to another taxi and said, 'Is it o.k.?' She said, 'It's o.k.' He goes out and told me to wait inside, wait here until I come back. It was a while before he came back and it was across the street in front of the barber shop and I goes across the street and gets in the car. I paid Robert Thomas the $12 inside the car. I arrived at the Union Station riding in a taxi. I went in the station after my arrival there to pick up my duffel bag and I picked it up. I came back out and got in the front seat of the taxi. When we arrived at a point on the Buford Highway about a half mile from Suwannee city limits there was an accident." Other evidence shows that the collision was due entirely to the negligence of the driver, Thomas, and that the plaintiff was seriously injured. Accordingly, the sole question is whether Thomas was, under these circumstances, such an agent or employee of Dennard as to subject the latter to damages resulting from his tortious misconduct. The defendant contends that he was not because, when he transferred his passenger from Dennard's licensed taxicab to his own unauthorized vehicle, he ceased to represent Dennard and whatever contract he made must be considered as his individual undertaking.

There is no inference to be drawn from the evidence that the plaintiff had any individual dealing with the driver, Thomas, but a contrary finding is demanded. Styles had a telephone call placed to Quick Service Cab Company (a name which, although he did not know it, was represented by a number of taxicab operators each doing business for himself). A Quick Service Cab, operated by Dennard through Thomas, arrived and the plaintiff entered for the purpose of being taken to Buford. Thomas, agent of Dennard, and Lillian Griggs, another agent of Dennard, agreed in the presence of the plaintiff as to the amount of the fare and the vehicle in which he would be transported, which was referred to by them as a "taxi" and of course the plaintiff had no knowledge that it was in fact an unlicensed vehicle. The plaintiff entered the vehicle at their direction and paid his fare, and thereby became a passenger of that part of the taxi business known as Quick Service Trips which was under the direction of the defendant Dennard. Dennard testified: "On February 8, 1955, I had [Robert Thomas] employed. . . He wasn't hired to work on a salary. By me having a job when he came down and worked, he give me half of whatever he made. If he made $10 he give me five and he would get five. He could stop work any time he got ready. . . When he wasn't driving my taxicab nobody drove it because you had to have a permit to drive and me and him were the only two that had a permit to drive it. No other person than Robert Thomas ever drove my taxicab." Dennard was engaged in the taxicab business through his agent Thomas, who had actual authority to recruit passengers for Dennard under the name of Quick Service Trips and take them to Buford. His actual authority extended only to do so in Dennard's licensed vehicle, but his apparent authority, in the absence of any showing of knowledge to the contrary on the part of the plaintiff, extended to continuing the trip, which was begun in Dennard's car, with a substitute vehicle. "The authority of an agent in a particular instance need not be proved by express contract; it may be established by the principal's conduct and course of dealing, and if one holds out another as his agent, and by his course of dealing indicates that the agent has certain authority, and thus induces another to deal with his

agent as such, he is estopped to deny that the agent has any authority which, as reasonably deducible from the conduct of the parties, the agent apparently has." *Armour Fertilizer Works* v. *Abel*, 15 *Ga. App.* 275, 280 (82 S. E. 907). See also *Davis* v. *Citizens-Floyd Bank &c. Co.*, 37 *Ga. App.* 275 (139 S. E. 826); *Bryant* v. *A. C. L. R. Co.*, 19 *Ga. App.* 536 (4) (91 S. E. 1047); *Hines* v. *Wallace*, 25 *Ga. App.* 377 (1a) (103 S. E. 439). The decision to substitute vehicles was made in the office of Quick Service Trips, the trade name under which Dennard (as well as others) operated, by two persons authorized to act for Dennard in his taxicab business. Assuming that the conversation between the plaintiff, Lillian Griggs, and Robert Thomas might have been inadmissible over proper objection because of the fact that Thomas was deceased at the time of the trial (Code § 38-1603) the record here shows no such objection to the evidence. Lillian Griggs was present in the courtroom and could have been called by the defendants in rebuttal if her testimony would have tended to contradict that of the plaintiff, but she was not placed on the stand. "Where a party has evidence in his power and within his reach by which he may repel a claim or charge against him, and omits to produce it . . . a presumption arises that the charge or claim is well founded." Code § 38-119. The situation here differs from *Cowart* v. *Jordan*, 75 *Ga. App.* 855 (44 S. E. 2d 804) where the owner of the taxicab was held not liable for injuries received by its operation by a substitute driver employed by the owner's employee against his express instructions to the contrary. That one employed to drive a motor vehicle may not, against the specific instructions of the master, delegate this authority, see *Carter* v. *Bishop*, 209 *Ga.* 919 (76 S. E. 2d 784).

In the present case the plaintiff was a passenger of Quick Service Trips from the time he entered the taxicab at the used car lot until the collision, and the only question for determination is the person or persons liable under this trade name in relation to the particular circumstances of this case. Atlanta Car for Hire Association was not a party to the action. Thomas Griggs, as an individual operator under Quick Service Trips, had no relationship to the plaintiff, and also had no relationship to Dennard other than to rent him certain facilities. But James

Dennard, by providing the taxicab and driver which responded to the plaintiff's call for taxi service to Quick Service Trips, thereby assumed the relationship of a carrier for hire to the plaintiff, and this relationship was not changed by the fact that the driver in the apparent scope of his employment and before actually leaving Atlanta procured an unauthorized substitute vehicle in which to transport him. Accordingly the evidence demands a verdict in favor of the plaintiff against Dennard in some amount. That the plaintiff paid the driver after leaving the office of Quick Service Trips would not authorize a contrary conclusion, because the *amount* of the fare (but not the question of the plaintiff's being a passenger) was only decided in the taxicab office, and the driver Thomas was the only man authorized by Dennard to collect fares for him. Nor is the defendant's position that Robert Thomas ceased to work for him at 9:30 that morning merely because he ceased driving Dennard's own vehicle at that time a warranted conclusion. The plaintiff became Dennard's passenger at the time he entered Dennard's taxicab, and under the facts of this case, there being no evidence to the contrary, remained so until the time of the collision.

In view of the fact that the verdict was demanded for the defendant Griggs and for the plaintiff against the defendant Dennard, it is unnecessary to pass upon any of the special grounds.

The trial court did not err in denying the motion for new trial as to Thomas L. Griggs, but did err in denying the motion for new trial as to James Dennard.

*Judgment affirmed in part and reversed in part. Carlisle, Quillian and Nichols, JJ., concur. Felton, C. J., and Gardner, P. J., dissent.*

FELTON, Chief Judge, and GARDNER, Presiding Judge, dissenting. We concur in the judgment as to Thomas L. Griggs, but we dissent from the judgment of reversal as to James Dennard. Thomas was a special agent of James Dennard for one purpose, namely, to operate for Dennard a specified, identified, registered and marked taxicab. The actual authority of Thomas to do so is undisputed. As we see the case Thomas' apparent authority went no further. Dennard put Thomas in possession of Den-

nard's authorized and registered cab. Such possession was indicative of his authority to operate that particular cab for hire. There certainly was nothing in such action by Dennard to lead the public to believe that Thomas had authority to substitute his own unmarked and unregistered vehicle for the regular cab. The circumstances of this case may seem hard on an injured plaintiff, but we have to take and apply the law as it exists, to the best of our understanding. There are two sides to this case. Thomas was a special agent for one specific purpose. If he attempted to exceed that authority, the one dealing with him was required by law to examine his authority. Code § 4-301. If Thomas could, under the majority's view, substitute his own vehicle, he could substitute any vehicle he could get his hands on, no matter how defective or dangerous. Dennard was as innocent in the transaction as was the plaintiff insofar as affirmative conduct is concerned and more nearly innocent insofar as being able to prevent the violation of the agent's authority was concerned because Dennard had no notice of the agent's intention to substitute a vehicle. In the absence of anything to the contrary, the law will presume that an agent will not violate his duties, and Dennard had a right to expect obedience to his contract with Thomas. There is nothing in this record that would have led the plaintiff to believe that Thomas was authorized to substitute an unmarked and unregistered vehicle. There is nothing to charge Dennard with knowledge that Thomas might substitute such a vehicle. The plaintiff did not rely on a previous substitution. Dennard did not by a course of conduct of permitting Thomas to so substitute vehicles give implied authority for such substituting. The mere giving of authority to Thomas to operate one particular cab certainly cannot be said to have induced the plaintiff to deal with Thomas as having authority to substitute unmarked and unregistered vehicles. We do not see the applicability of the majority's citations on this question to the facts of this case. The rules which we think apply are stated in various cases too numerous to cite, but see 2 Am. Jur. 82-84, Agency, §§ 101, 102, and *Jewell* v. *Martin*, 67 *Ga. App.* 295 (20 S. E. 2d 93). What is said above applies to whatever authority the telephone girl had to act for Dennard.