CARTER *et al. v.* BISHOP, by next friend.

No. 18186. Argued May 11, 1953—Decided June 10, 1953—Rehearing denied July 15, 1953.

*Pittman, Hodge & Kinney* and *R. Carter.Pittman,* for plaintiff in error.

*Mitchell & Mitchell,* contra.

Almand, Justice. Mrs. Delories Bishop, by next friend, in an action against Carter Contracting Company, a motor common carrier, on account of the death of her husband by reason of negligence, statutory and simple, of the defendant, recovered a verdict. The defendant's motion for a new trial as amended was overruled, and the Court of Appeals affirmed the judgment denying a new trial. We granted the defendant's application for certiorari to the Court of Appeals. A full statement of the facts and questions at issue, and the opinion of the Court of Appeals, will be found in 87 *Ga. App.* 554 (74 S. E. 2d, 562). We will refer to the parties in the positions which they occupied in the trial court.

■ The plaintiff in her petition charged that the defendant was guilty of negligence which contributed proximately to the death of her husband, "in that the signal and warning lights on the top and side of the tractor and trailer were not lighted and burning as required by law." Over objection of the defendant, the trial judge admitted in evidence certain rules of the Georgia Public Service Commission respecting the dimensions of motor vehicles and tractors and trailers, and reflectors and lights on the same as required of motor common carriers. The judge gave the rules of the Public Service Commission in his charge to the jury, and informed them that a violation of any of these rules

would constitute negligence per se. The defendant assigned error in its motion for a new trial on these instructions. One of the objections to the instructions given as to these rules was that section 24 of the act of 1931 (Ga. L. 1931, pp. 199-213), which purported to give the Public Service Commission power to promulgate rules and regulations as to lights and reflectors on vehicles used by motor common carriers, has been repealed by the act of 1939 (Ga. L. 1939, pp. 295-303), which fixed a statutory rule as to lights required on all motor vehicles, and placed in the Department of Public Safety the sole power to make rules as to reflectors on all motor vehicles. The Court of Appeals held that the act of 1939, vesting in the Department of Public Safety authority to determine and specify the type of reflectors to be placed on all vehicles using the highways of this State, did not repeal or supersede section 24 of the act of 1931, so as to deprive the Public Service Commission of its power to promulgate rules and regulations as to number and type of reflectors to be used on vehicles of motor common carriers, and that consequently it was not error to admit in evidence rules of the Public Service Commission in regard thereto, or to charge that a violation of any of these rules would constitute negligence per se.

The act of 1931 has for its purpose the prescribing of conditions and regulations under which common carriers by motor vehicles are permitted to operate upon the highways of this State. The act of 1939 is one to define reckless driving, to restrict the speed on public streets and highways, and to provide for the dimming of lights on motor vehicles; and provided that motor vehicles used on the public highways shall be equipped with reflectors to serve as warning signals to drivers of approaching vehicles, how the minimum requirements shall be determined, and placed in the Department of Public Safety authority to prescribe the type of reflectors to be placed on all vehicles.

For a better view as to the field which these two acts, the act of 1941 (Ga. L. 1941, pp. 449-454), and the rules of the Public Service Commission cover, we set out below in parallel columns their respective provisions, which were introduced in evidence.

GA. LAWS 1931 AND
RULES OF THE PUBLIC
SERVICE COMMISSION.

"The Commission shall have the authority to promulgate rules designed to promote safety, and any such safety rules promulgated or deemed necessary by such Commission shall include the following: (a) Every motor unit and all parts thereof shall be maintained in a safe condition at all times. And the lights and brakes and equipment shall meet such safety requirements as the Commission shall from time to time promulgate." Ga. L. 1931, pp. 209, 210, Section 24.

"Every bus or truck 80 inches or more in width—On every bus or truck 80 inches or more in overall width, there shall be

GA. LAWS 1939, 1941.

"(a) All vehicles using the public roads and highways of the State of Georgia at night shall be equipped with front and rear reflectors, in addition to the lights required by Section 4 of this Act, to serve as a warning signal to drivers of approaching vehicles. (b) The Department of Public Safety is hereby vested with authority to determine and specify the type of reflectors to be placed on vehicles; to approve reflectors meeting the minimum requirements; and to make such other reasonable rules and regulations needed for the use of said reflectors. (c) The fact that no reflectors or reflectors failing to meet the minimum requirements and approval of the said Department of Public Safety according to the said rules and regulations of the Department, are on the vehicle, shall be considered prima facie evidence of negligence on the part of the owner of such a vehicle." Ga. L. 1939, pp. 295-300, Section 5.

"(b) Provided further that all trucks of more than 1-1/2 ton capacity shall have clearance lights at each extremity

at least the following devices and reflectors: (a) On the front, two head lamps, one at each side; two amber clearance lamps, one at each side; (b) On the rear, one red tail lamp; one red or amber stop light; two red clearance lamps, one at each side; two red reflectors, one at each side; (c) On each side one amber side-marker lamp, located at or near the front; one red side-marker lamp, located at or near the rear; one amber reflector, located at or near the front; one red reflector, located at or near the rear." Rule 48, subsection 3.

"On every semi-trailer or full trailer having a gross weight in excess of 3000 pounds, there shall be at least the following lighting devices and reflectors: (a) On the front, two amber clearance lights, one at each side; (b) On the rear, one red tail lamp; one red or amber stop light; two red clearance lamps, one at each side; two red reflectors, one at each side; (c) On each side, one amber side-marker lamp, located at or near the front; one red side-marker lamp, located at or near the rear; one amber reflector located at or near the front; one red reflector located in the front and clearance lights at each extremity in the rear. Where the cab of said truck is not as wide as the body said clearance [lights] must be placed at the widest extremity of the body, so as to clearly indicate the width of the truck to approaching traffic from either direction. Said lights not to be of any glaring or blinding nature." Ga. L. 1939, p. 299, Section 4.

at or near the rear." Rule 48, subsection 5.

"When lighted lamps are required on moving vehicles— Whenever any motor vehicle is driven upon a highway there shall be displayed the lighted lamps required under Part 3, Rule 48, during the following times: (a) During the period from one-half hour after sunset to one-half hour before sunrise; (b) During any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead." Rule 34.

"(a) Every motor vehicle operated on the public streets or highways of this State shall be equipped with two front headlights located near the side extremities of the front, capable of revealing a person, vehicle or object at least five hundred feet (500') ahead in the darkness, and so arranged that at no time will the beam from said lights create a blinding glare or interfere with the vision of the driver of any vehicle approaching within five hundred feet (500') of said vehicle; and any auxiliary headlights in front must be extinguished when within five hundred feet (500') of any vehicle ahead or any congested traffic area; and shall keep them extinguished until passing the approaching vehicle; provided, further, that every such motor vehicle shall be equipped also with a rear light, red in color, and visible for at least two hundred feet (200') in the darkness in the rear; and provided, further, that said lights, both front and rear, when said motor vehicle is being operated on a public street or highway must be lighted one half hour after sunset to one half hour

924

before sunrise and at any other time when vision is restricted for any reason less than five hundred feet (500') along a public street or highway." Ga. L. 1939, p. 299, Section 4.

"No vehicle shall exceed a total outside width including any load thereon, of ninety-six inches; no vehicle shall exceed a length of 35 feet extreme over-all dimensions; inclusive of front and rear bumpers; combinations of vehicles shall consist of not more than two units; and, when so combined shall not exceed a total length of 45 feet." Rule 11-A.

"(a) No vehicle shall exceed a total outside width including any load thereon, of ninety-six inches (96"); no vehicle unladen or with load shall exceed a height of 13 feet 6 inches; no vehicle shall exceed a length of 35 feet extreme overall dimensions, inclusive of front and rear bumpers; combinations of vehicles shall consist of not more than two units, and, when so combined, shall not exceed a total length of 45 feet; for occasional movements of materials or objects of dimensions which exceed the limits [herein] provided, a special permit shall be required as now provided by law. Provided, however, that loads of poles, logs, lumber, structural steel, piping, and timber may exceed the length herein fixed without requiring special permit." Ga. L. 1941, p. 450, Section 1.

"Every officer, agent, or employee of any corporation and every person who violates or fails to comply with the provisions of Chapter 68-6 relating to the regulation of motor common carriers, or any order, rule, or regulation of the Pub-

"It shall be lawful to operate over the highways of this State any vehicle which complies with the provisions as to dimensions, tires and loads, as stated in the preceding section." Ga. L. 1941, p. 451, Section 2.

lic Service Commission, or who procures, aids, or abets therein, shall be guilty of a misdemeanor." Code, § 68-9911.

"Any person, firm, corporation, association, trustee, receiver, or other fiduciary, or owner, employee or other agent, who, by himself, itself, or themselves, or through or in connection with another, violates or participates in violation of any of the provisions of this Act, shall be guilty of a misdemeanor and punished as such." Ga. L. 1941, p. 452, Section 4.

"All laws and parts of laws in conflict with this Act be and the same are hereby repealed." Ga. L. 1939, p. 303, Section 10.

From a comparison of the acts of 1939 and 1941, supra, with the rules of the Public Service Commission, it will be seen that the General Assembly has by statutory provision enacted rules and regulations as to front and rear lights; clearance lights at each extremity of the front and rear of all trucks of more than one and one-half ton capacity; fixed the dimensions as to width and length of motor vehicles; and invested in the Department of Public Safety authority to determine and specify the type of reflectors to be placed on all vehicles. The violation of a rule promulgated by the Department of Public Safety is made prima facie evidence of negligence on the part of the owner of the vehicle. The act of 1939, applying to all vehicles using the public highways of this State, includes motor common carriers. It is plain that the nature and kind of front and rear lights, clearance lights on all trucks exceeding one and one-half ton capacity, the width and length of motor trucks, are statutory requirements, and supersede the rules and regulations of the Public Service Commission as to these matters. It is further evident that Section 5 (b) of the act of 1939 granted to the Department of Public Safety the power to determine and specify the type of reflectors to be placed on all motor vehicles, and

this power is not in the Public Service Commission. It follows that the Court of Appeals erred in holding that the act of 1939 did not repeal section 24 of the act of 1931 as to the matters above referred to.

Having held that the Public Service Commission was without authority to issue the rules complained of, it is unnecessary to pass upon the question of the constitutionality of section 24 of the act of 1931, or upon the validity of rules issued under this section.

■ The Court of Appeals ruled as follows: "The owner of a truck engaged as a common carrier in this State is not relieved from liability for the death of a guest in an automobile, which was struck by the truck in a collision, because of the fact that at the time of the collision the truck was being driven by an unauthorized person in violation of the owner's rule, where the regular driver permitted the unauthorized person to drive the truck while the regular driver slept in the truck, and the truck was being operated for the benefit of the owner." The Court of Appeals in its opinion conceded that the above ruling was not supported by any decided case of that court or of this court, and, being impressed by decisions from other jurisdictions, they adopted the rule enunciated in Cain *v.* Bowlby, 114 Fed. 2d, 519. That case cites decisions from the highest courts of appeal in Minnesota, Iowa, New York, and Maryland. An examination of those cited cases shows that liability was either placed upon the employer because the substitute employee was known to be an incompetent driver, or where, by statute, the owner of a motor vehicle was made liable by reason of the use of a vehicle on the highway for the benefit of the owner or employer. The ruling in the New Mexico case is based upon a homicide statute which imposes liability upon one "who owns any such . . public conveyance at the time any injury is received."

In Grant *v.* Knepper, 245 N. Y. 158 (156 N. E. 650, 54 A. L. R. 845), often cited in support of the principle of law claimed by the plaintiff, Chief Judge Cardozo, writing the opinion of the court, said: "There are holdings or at least dicta to the effect that, if the servant is present, the act of his substitute will be taken as his own, though there was neither negligence in the selection of one inexperienced or incompetent, nor failure of

supervision in circumstances where supervision could be found to be effective. We are not prepared to go so far if liability is to be measured by the rule at common law. Cf. 2 Mechem, Agency, § 1867; Mechem, Master's Liability for Stranger's Negligence, 3 Mich. L. Rev. 198, 216; 7 Labatt, Mast. & S., pp. 7732 et seq. . . Passing from common law to statute, we find the owner's liability not merely continued, but extended. By Highway Law, § 282-e, 'every owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner.' 'Use' as well as 'operation' may thus fasten liability upon the owner under the provisions of the statute." The court thus recognized that, strictly applying the rules of common law, a master would not be liable for negligent acts of a substitute servant whose employment was unauthorized, merely because the authorized servant failed to supervise and control the acts of the substitute. Reference to our statutory provisions, and decisions of this court relating to principal and agent and master and servant, discloses that the common-law rule as to liability or nonliability of the master for acts of a substitute employee engaged without authority of the master, has been followed. Every person is liable for torts committed by his servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary. Code, § 105-108. The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the act of another in his behalf. Code, § 4-101. An agent may not delegate authority to another, unless specially empowered to do so. § 4-103. An agent must act within the authority granted to him, reasonably interpreted; and if he shall exceed or violate his instructions, he does so at his own risk, the principal having the privilege of affirming or dissenting, as his interest may dictate. § 4-202.

In *White* v. *Levi*, 137 *Ga*. 269 (2) (73 S. E. 376), this court held: "If a master sent a servant to bring to his place of business an automobile for the purpose of having it repaired, and

the servant so sent procured another to take the machine to its destination in his stead, the master was not liable for the negligence of such person, unless the servant had authority, express or implied, to employ him, or unless the employment was ratified." In *Cooper* v. *Lowery*, 4 *Ga. App.* 120 (60 S. E. 1015), it was held: "If a servant who is employed to do certain work for his master employs another person to assist him, the master is liable for the negligence of the assistant only when the servant had authority, express or implied, to employ him, or when the act of employment is ratified by the master." *Samples* v. *Shaw*, 47 *Ga. App.* 337 (170 S. E. 389), holds: "In this case, in which it was sought to recover from the owner of an automobile and the driver, who was the nephew of the owner, for alleged negligence of the driver, the 'family-car' rule was not applicable so as to charge the owner with liability for the negligence of his nephew, in the absence of testimony that the nephew was a member of the owner's family and thus entitled to drive the car by the implied consent of the owner. The court did not err in directing a verdict for the owner." In the opinion, at page 338 (3), it was said: "Unless a primary agent, expressly or impliedly authorized by the principal as owner of an automobile to drive it on the business of the owner, is himself expressly or impliedly authorized to appoint a subagent for that purpose, the owner will not be liable for the negligence of the latter." In *Cowart* v. *Jordan*, 75 *Ga. App.* 855 (44 S. E. 2d, 804), the court, in following these rulings (at page 860) stated: "The uncontradicted evidence discloses that Jessie Maddox, under his contract with the defendant to operate the taxicab, was without authority to permit anyone else to use or operate the cab for any purpose whatsoever. We think, therefore, that under the elementary rules of agency it was not within the power of Jessie Maddox to permit anyone else to use the cab either in the course of the owner's business or otherwise without the consent of the owner. Maddox could not thus extend the scope of his agency without the consent of the master. . . The relationship of master and servant can not be imposed upon a person without his consent, express or implied. The defendant was free to select his own servant. He was responsible for the acts of his servant within the scope of his employment, but he

was not responsible for the act of an assistant permitted without his authority to act for him. Butler *v.* Mechanics' Iron Foundry Co., 259 Mass. 560 (156 N. E. 720, 54 A. L. R. 849); 7-8 Huddy Automobile Law, § 102, p. 272."

In the instant case, at the time of the collision, the employee of the defendant was in charge of the defendant's motor vehicle under specific written instructions and rules forbidding him to allow any unauthorized person to operate the vehicle. In disobedience of this rule, Tyree turned the operation of the vehicle over to Byrd, the unauthorized driver, who was driving at the time of the collision, Tyree being asleep in a compartment of the vehicle. Tyree's act in letting Byrd operate the vehicle was not in the scope of his employment, but was in direct violation of his duties. The subsequent failure of Tyree to stay alongside Byrd and supervise his driving of the truck is not an act of the employee which could be chargeable to the employer, Tyree not being employed to supervise or control the operation of the truck by a third person, but to operate it himself, and not to permit any unauthorized person to operate it. Tyree's action in turning the operation of the truck over to Byrd, being entirely beyond the scope of his employment, was the same as if he had abandoned the vehicle, and the fact that he stayed on the truck and failed to supervise its operation by Byrd did not make his own nonfeasance chargeable to the employer. Nor does the fact that Byrd, in driving the truck, was doing an act beneficial to the employer, of itself impose liability upon the employer, for the reason that Byrd was not a servant or agent of the employer. The liability of an employer for the negligence of his servant is predicated on the basis that his servant, while in the course and scope of his employment, causes the injury, regardless of whether the master benefited from the act or not. The opinion of the Court of Appeals does not hold that the defendant here ratified the conduct of Tyree in employing Byrd, and the evidence is entirely insufficient to show that the defendant, by its acts or conduct, ratified the act of Tyree in this regard.

It follows from what has been said above that the instructions of the court to the jury—that the owner of a vehicle engaged as a common carrier of freight would not be relieved of liability for the death of the plaintiff's husband, who was struck by the

negligence of the driver of the truck, because of the fact that, "at the time the truck was being driven by an unauthorized person in violation of the owner's rule, where the regular truck driver permitted the unauthorized person to drive the truck while the regular truck driver slept in the truck, and where the truck was at the time being operated in the prosecution of and for the benefit of the owner's business, where it is shown that the regular truck driver is in the truck and in charge of it on the business of his master, and where it is shown that the regular truck driver failed to exercise ordinary care to supervise and control the conduct of his substitute in the operation of such truck immediately prior to the accident, and where the regular truck driver by the exercise of ordinary care in the supervising and controlling the conduct of his substitute driver could have avoided the collision"—and the ruling of the Court of Appeals upholding such charge, as set out in the first part of this division, were erroneous.

*Judgment reversed. All the Justices concur, except Atkinson, P. J., not participating.*