39634.   PORTER, by Next Friend v. JACK'S COOKIE
COMPANY, INC.

DECIDED SEPTEMBER 5, 1962.

*Stephens, Fortson, Bentley & Griffin, Edwin B. Fortson, Stow & Andrews, Frank B. Stow, Robert E. Andrews,* for plaintiff in error.

*Erwin, Birchmore & Epting, Howell C. Erwin, Jr.,* contra.

BELL, Judge. ■ Counsel for both parties have devoted considerable research to the question whether the defendant had the right to cross-examine, without direct examination, a witness who had been called for cross-examination by the plaintiff.

The plaintiff cross-examined the witness under the authority of *Code* § 38-1801, as amended, which, in part, provides that either party may make the agent of the other party a witness with the privilege of subjecting him to a thorough and sifting examination and with the further privilege of impeachment as if the witness had testified in his own behalf and were being cross-examined.

The defendant contends that it was entitled to cross-examine the witness since he was no longer its agent or employee, and was interested in the outcome of the case as he was the father of the plaintiff.

Whether the court properly or improperly allowed the defendant to cross-examine the witness, we do not find it necessary to decide. Following the overruling of the plaintiff's objection to the defendant's cross-examination of the witness, on two more occasions the defendant cross-examined this same witness without objection or exception being taken.

In *Benton Rapid Exp. v. Sammons*, 63 Ga. App. 23 (1), 27-29 (10 SE2d 290), this court held that the defendant had waived any right it might have had to cross-examine a particular witness by submitting to a former ruling of the court, and in failing to take exception to that ruling and that later excepting to the subsequent ruling on the same issue was not sufficient. See also *Sapp v. Callaway*, 208 Ga. 805 (3) (69 SE2d 734), which points to the well settled rule that the subsequent admission of testimony of like nature after a prior objection is not a ground for reversible error.

We feel that the principles enunciated in *Sammons* and *Callaway* apply to and control the issue here. Here there were subsequent cross-examinations without objections by the same party of the same witness on two occasions after the overruling of a prior objection to such cross-examination. The failure to object and except to the later cross-examinations constituted an acquiescence in the court's overruling of the prior objection

and a waiver of any error the trial court may have made in overruling the first objection.

■ The plaintiff's second exception was to the trial court's direction of a verdict for the defendant. The uncontradicted evidence showed that the defendant company had a long-standing rule that all of its business would cease at sundown on Friday afternoon until sundown on Saturday, the employees being forbidden to work during these hours, and that the driver of the truck knew' of this rule prior to the accident which occasioned this suit. The uncontradicted evidence shows that the accident happened after 8 on a Friday night and that sundown on this day was shortly after 7. The plaintiff was fired after the accident for violation of this rule and another one prohibiting unauthorized riders in the vehicle.

The defendant urges that *Hodges v. Seaboard Loan &c. Assn.*, 61 Ga. App. 443 (6 SE2d 133), is authority for direction of the verdict in its favor. In the *Hodges* case the driver was an employee of the defendant, but the evidence showed without any contradiction that the collision occurred on Sunday; that the defendant was not conducting any business on that day; that the driver had express orders not to drive on Sunday; and that he was operating the vehicle without the knowledge of the defendant and contrary to orders.

Through an oversight in judicial draftsmanship, the official report of the *Hodges* case does not reveal a most significant factual situation present in the record, which is that the uncontradicted evidence there showed that the driver of the vehicle was on a personal mission—a mere frolic of his own.

The failure to recite in the statement of facts in *Hodges* the purpose for which the vehicle was being operated, plus what is said in the opinion, makes the decision somewhat misleading. The fact that the employee was driving the vehicle on a personal mission of his own was certainly the principal factor which motivated the *Hodges* decision. Here, this factor is not present as the driver was not on a personal mission at the time the collision occurred.

It is elementary law that the employer is not liable for the negligent operation of a motor vehicle by an employee where the

sole objective of the driver is to carry out some purpose of his own. No hard and fast rule can be formulated by which it is possible to determine when the employee is within the scope of his employment, and many fine distinctions in various jurisdictions have been drawn between a slight deviation, a departure from employment, the effect of an intention to return to the employment, and the question of how close in time and place an employee must be in order to be said to have re-entered the course of his employment after a departure.

However, here the question is: Where an employee is expressly forbidden to work during certain hours but does so and engages in carrying out the duties for which he was employed, does his disobedience of the employer's rule cause him to be out of the course of his employment? A violation of instructions of the employer may constitute a departure from the scope of the employment. *Carter v. Bishop,* 87 Ga. App. 554 (74 SE2d 562); appeal transferred, 209 Ga. 146 (71 SE2d 216); reversed 209 Ga. 919 (76 SE2d 784); conformed to, 88 Ga. App. 601 (76 SE2d 783). In *Carter* the Supreme Court pointed out that the liability of an employer for the negligence of the servant is predicated on the basis that the servant, while in the course of and in the scope of the employment, caused the injury and that the mere fact that the employer benefited from the act being performed at the time was not of itself sufficient to justify the imposition of liability. The Supreme Court held that where the employee had charge of the defendant's motor vehicle, in disobedience of specific written instructions forbidding him to allow any unauthorized persons to operate the vehicle, turned the operation of the vehicle over to a third party, and went to sleep in the compartment of the vehicle, the employee's act in allowing such operation of the vehicle was not in the scope of his employment. This act was considered to be the equivalent of the employee's abandoning the vehicle. See also *Powell v. Cortez,* 44 Ga. App. 205 (160 SE 698).

Not every violation of instructions of the employer will take the employee out of the scope of his employment. "To make the owner of an automobile liable for his driver's negligence, it must be established that the latter was acting within the scope

of his employment. In other words, the owner of a motor vehicle is liable for the acts of his chauffeur when the latter is acting within the scope of his master's business. Conversely, the owner is not liable for the conduct of the servant when the latter is not acting within the scope of his employment. While it is, of course, true that the master rarely commands the servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort, if the acts under consideration are done in the prosecution of the master's business, liability will ordinarily attach to the master. But if the tort of the servant is entirely disconnected from the service or business of the master, the latter is not responsible, although it may occur during the general term of the servant's employment. However, so long as the servant is acting within the scope of his employment, the owner is liable, though the negligent act was not necessary to the performance of his duties, or though it was not expressly authorized or known to the employer, or was contrary to his instructions. It is not enough, in order to establish liability, to show that the master has an interest in what is being done. It must also be made to appear that the servant whose act is in question has authority from the master to perform the class of service to which the act belongs. *If the act is within the class, the master is bound, although the servant is forbidden to perform the particular act.* If not within the class, the master is not bound." (Emphasis added.) *Evans v. Caldwell,* 52 Ga. App. 475, 477 (184 SE 440); affirmed 184 Ga. 203 (190 SE 582).

Under the test approved in *Evans,* if the act is within the class of service which the employee has the authority from the employer to perform, the employer is bound through the employee is forbidden to perform the particular act. If the act is not within the class of service, the employer is not bound.

The evidence conclusively shows that the accident under consideration here occurred during hours when the employee was forbidden to work but that the work the employee was performing *was that for which he was hired,* i.e., the servicing of his cookie route. Where the employee is doing an act within the class of service for which he is employed, does the fact that he is performing it at a time when he is forbidden to perform it

take him out of the scope of his employment? We think it does not.

Accordingly, we hold that the driver of the truck here was performing an act within the, class of service authorized by the master, and the mere fact that the performance occurred during forbidden hours was not such a departure as to remove the driver from the scope of his employment.

■ Under the most favorable view of the evidence for the plaintiff, he was not an employee but was a gratuitous volunteer, riding in the truck for the purpose of assisting his father because "he enjoyed going with [his father] and helping around." He was not paid for the service, and while there was a conflict in the evidence as to whether there was then in effect a rule prohibiting riders in the defendant's trucks, the evidence is undisputed that the truck had only one seat in it, and thus was not constructed for carrying passengers. When the plaintiff rode in the truck with his father, he, either stood up or sat on a box.

Under these circumstances, the duty owing by the defendant to the plaintiff, as a gratuitous passenger in its truck, was to exercise slight diligence towards him. The, defendant is liable only for injuries to the plaintiff from gross negligence, which is the failure to exercise slight diligence. *Code* § 105-203; *Chancey v. Cobb*, 102 Ga. App. 636 (117 SE2d 189). See also the cases collected in the general note following *Code Ch.* 68-3 under the catchwords, "Invited guests." Cf. *Atlanta &c. R. Co. v. West*, 121 Ga. 641 (49 SE 711, 67 LRA 701, 104 ASR 179); and *Southern R. Co. v. Duke*, 16 Ga. App. 673 (85 SE 974).

Slight diligence is defined in the Code as that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances, and the absence of such care is gross negligence. The testimony of both the driver and the plaintiff, who were the only witnesses who testified to the facts of the accident, shows that the driver and the plaintiff looked carefully in both directions; the vehicle came almost to a stop at the intersection; was moving from 3 to 5 miles per hour when it came into the intersection; and was struck by a car which came "over the hill very fast." The

plaintiff testified the driver looked up and down the road two or three times.

The court can determine in plain and indisputable cases issues of negligence, whether gross, slight or ordinary. Since there was no evidence to support a finding of gross negligence, the trial court properly directed the verdict for the defendant. *Benefield v. McDonough Const. Co.*, 106 Ga. App. 194 (126 SE2d 704).

*Judgment affirmed. Felton, C. J., and Hall, J., concur.*