49521. HUDDLE HOUSE, INC. v. BURKE et al.

Argued July 9, 1974 — Decided December 20, 1974 —

646

*Savell, Williams, Cox & Angel, Edward L. Savell,* for appellant.

*Cofer, Beauchamp & Hawes, Peyton S. Hawes, Jr., Robert S. Jones,* for appellees.

PANNELL, Presiding Judge.

The case as decided by the trial judge is, in our opinion, dependent entirely on the following erroneous concepts: (1) That the ten-year-old child, Burke, was an invitee *in the place where he was injured behind the counter;* (2) that employing him to get ice and thus assist his cousin, Murphy, and the waitress in the performance of their duties behind the counter, was a mere violation of instructions on the part of the cousin and the waitress, *but was within the scope of their employment because both Murphy and the waitress shared the duties of getting ice as a part of their employment.*

In our opinion, the uncontradicted evidence, when applied to the law as decided by this court and the Supreme Court of this state, demand a finding to the contrary of these premises.

The injured boy, Burke, had been told by the manager of the defendant and in the presence of both Murphy and the waitress (he had been found washing dishes behind the counter by the manager) not to go

behind the counter and that no one but employees were permitted behind the counter. This was no mere sign containing a rule or prohibition which the boy may or may not have read (*Murray Biscuit Co. v. Hutto,* 119 Ga. App. 377 (167 SE2d 182)) and when he, at the invitation of his cousin, Murphy, went behind the counter he did so knowing that this was in violation of express instructions from the manager, not only given to them but given to him. This is decidedly different from cases where one is injured not knowing the servant is violating instructions, as was the case in the example given in *Summers v. Barron,* 59 Ga. App. 202, 210 (200 SE 228). Further, an invitation to part of the premises as to a customer is not an invitation to all places. *Piggly Wiggly, Macon v. Kelsey,* 83 Ga. App. 526 (64 SE2d 201); *Coffer v. Bradshaw,* 46 Ga. App. 143, 149 (167 SE 119).

The only conclusion we can reach under these circumstances is that the injured boy, Burke, was nothing but a mere trespasser or volunteer to whom the duty owed was not to wilfully and to wantonly injure him, and this rule applies alike to adults and to children of tender years. *Atlantic C. L. R. Co. v. O'Neal,* 180 Ga. 153 (178 SE 451). See *Early v. Houser & Houser,* 28 Ga. App. 24 (2) (109 SE 914). There was no acceptance of the offered services by the defendant-master as was true in *Mulligan v. Blackwood,* 115 Ga. App. 618, 620 (155 SE2d 680); *Harper v. DeFreitas,* 117 Ga. App. 236 (2) (160 SE2d 260); *Dean v. Gainesville Stone Co.,* 118 Ga. App. 142, 143 (2) (162 SE2d 858); *Shepherd v. Whigham,* 111 Ga. App. 274, 276 (1) (141 SE2d 583).

The act of the servants in securing the services of Burke in getting ice may have been in the prosecution of the master's business but it was nevertheless not in the scope of their employment. No employee has power to employ another to assist him in his work without express authority; and if he does so, he is acting without the scope of his authority. See *Carter v. Bishop,* 209 Ga. 919 (76 SE2d 784); *Cowart v. Jordan,* 75 Ga. App. 855 (44 SE2d 804); *Waller v. Southern Ice &c. Co.,* 144 Ga. 695 (87 SE 888); *Atlanta & W. P. R. Co. v. West,* 121 Ga. 641 (4) (49 SE 711). In *Crane Auto Parts v. Patterson,* 90 Ga. App. 257, 261 (82 SE2d 666), relied on by the appellee, only a

violation of instructions was involved, unknown to the injured party, and it was held: "The jury was authorized to conclude that the invitation to go on the lot as well as to ride in the truck was given in the prosecution and within the scope of the defendant's business." Before the master may be held liable for the negligent acts of the servant, the servants must have been acting both within the scope of their employment and in the prosecution of the master's business. *Selman v. Wallace,* 45 Ga. App. 688 (165 SE 851).

In the present case we may have the second element because the child, Burke, was getting ice for the master's business; but the first element is entirely lacking under the above decisions and the facts of the present case.

Should we assume that Burke, at the time he was injured, might by getting ice have had present business relations with the master, which might have rendered his presence of mutual aid to both (see *Cook v. Southern R. Co.,* 53 Ga. App. 723, (187 SE 274); *Higgins v. D. & F. Electric Co.,* 110 Ga. App. 790, 799 (140 SE2d 99); *Findley v. Lipsitz,* 106 Ga. App. 24, 26 (126 SE2d 299); *Crane Auto Parts v. Patterson,* 90 Ga. App. 257, supra) it appears here this particular business relation (helping behind the counter) was one which the owner and occupier of the premises had told him he was not to perform and in a place where he was told not to go. For these reasons the test above referred to is not applicable. While it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within range of a dangerous act being done or a hidden peril on one's premises (*Cooper v. Anderson,* 96 Ga. App. 800 (101 SE2d 770)), and it is usually wilful or wanton not to exercise ordinary care to prevent injuring a licensee or trespasser who is actually known to be, or reasonably expected to be within range of a dangerous act being done *(Murray Biscuit Co. v. Hutto,* 115 Ga. App. 870 (1) (156 SE2d 132)), such rule can hardly be applied where the owner and occupier of the premises (the master) had no such knowledge; and where the only persons having such knowledge were the servants of the owner who, contrary to instructions, and acting *without the scope of their employment* placed such person in the

forbidden area to help them in their work. Where the servant or agent is acting in his own interest notice to the principal is not imputed. *Union City Realty &c. Co. v. Wright,* 145 Ga. 730, 731 (3) (89 SE 822); *Harvard v. Davis,* 145 Ga. 580 (4) (89 SE 740). Further, we think it can safely be said that the operation of the ice machine with the blades in the ice machine at the upper end of the chute which dropped the ice in a storage area, did not constitute a dangerous act being done or a hidden peril or mantrap. See in this connection, *Crosby v. Savannah Electric &c. Co.,* 114 Ga. App. 193, 198-201 (150 SE2d 563).

In our opinion, this case is controlled by *Atlanta & W. P. R. Co. v. West,* 121 Ga. 641 (4), supra. We accordingly, reverse the trial judge for his failure to grant the judgment notwithstanding the verdict.

*Judgment reversed. Bell, C. J., Evans, Clark, Stolz and Marshall, JJ., concur. Quillian and Webb, JJ., concur specially. Deen, P. J., not participating.*

WEBB, Judge, concurring specially.

The majority place great reliance on the fact that Mr. York, the manager, specifically instructed Burke, in the presence of the other employees, to stay out of the counter area where he was not permitted to go. Upon this the case hangs, and upon this I have concluded the majority is quite correct.

Had there been some evidence of distraction, emergency, extreme urging, or perhaps even simple forgetfulness on the part of the ten-year-old plaintiff, I might conclude otherwise. But here there is no doubt that young Burke recognized that Mr. York was the manager and that he went behind the counter knowing that this was in violation of the manager's express instruction, not only given to the employees but to him as well. As Burke testified: "Q. Who is Mr. York? A. He is the manager... Q. Now, you were told earlier in the day by your cousin, John Murphy, that you could not go behind the counter, did you not? A. I was not told by John Murphy. I was told by Mr. York. Q. You were told by Mr. York? A. Yes, sir. Q. And I believe you said that when you went back there, Mr. York's back was to you, is that right? A. Yes, sir... Q. Now,

when you were back there, Mr. Ken York, the manager, told you that you couldn't go behind the counter back where the ice room was, is that right? A. Yes, sir... Q. Do you have any reason to believe that anything you might have said in 1972 (on deposition) was inaccurate as far as you knew at that time? A. Yes, sir. Q. You do? A. Yes, sir. Q. What particular portion of it? A. Johnny didn't tell me I wasn't supposed to come back there. Mr. York was the one that told me."

In view of this testimony, I see no basis upon which The Huddle House could be held liable.

I am authorized to state that Judge Quillian joins in the foregoing.