## 52090. HAGIN et al. v. POWERS et al.

QUILLIAN, Judge.

As a result of a fire in building "N" in the Forest Vale Apartments, five complaints were filed by tenants of the building against James Hagin and Dough Stacks, plumbing contractors doing business as Hagin-Stacks Company. It was alleged that the fire damage sustained by the various plaintiffs was proximately caused by the failure of defendants' employees to exercise ordinary care while using a torch to make repairs to the plumbing of the building occupied by plaintiffs. The cases were tried together before the court without a jury, resulting in a judgment in favor of the tenants in each of the cases. Defendants appealed, contending that their employees were not within the scope of their employment in making the repairs.

Because the trial court had failed to make a finding as to this key issue, we remanded the appeal for appropriate findings of fact and conclusions of law. *Hagin v. Powers,* 134 Ga. App. 609 (215 SE2d 346). On its second appearance at 136 Ga. App. 395 (221 SE2d 245), it was again remanded for the formal separation of the findings

of fact from the conclusions of law as required by *Doyal Development Co. v. Blair,* 234 Ga. 261 (215 SE2d 471), which had been decided in the interim. The trial court found that the employees had been within the scope of their employment and assessed the damages of the plaintiffs. These issues are now before us for review. *Held:*

1. Defendants' employees were performing two classes of plumbing work: (1) the installation of original plumbing in new buildings, and (2) repair and maintenance work on existing buildings. Defendants and their employees testified that no "repair work" was to be performed without prior approval of one of the defendants. On the weekend prior to the fire there had been a "hard freeze." Mr. Cloer, owner of the Forest Vale Apartments was notified that one of the apartments in Building "N" had a ruptured line and was without water. Employees of defendants were working that day but neither of the defendants could be located. A call to their office resulted in their secretary telling him: "Go find Stacks and tell him to go fix it." Mr. Hollowell, one of defendants' employees who performed the repair work witnessed Mr. Cloer making telephone calls in an attempt to locate defendants but finally was told to "go on over there" and "he would call them on the phone and make it all right with Mr. Hagin and Mr. Stacks." During the repair work a "Presto-lite" torch was used. Shortly after they left the building they noted "blue smoke, coming out the eve of the roof."

Under the rule approved by this court in *Evans v. Caldwell,* 52 Ga. App. 475, 478 (184 SE 440), affd. 184 Ga. 203 (190 SE 582); and *Gann v. Mills,* 124 Ga. App. 238, 240 (183 SE2d 523): "if the act is within the class of service which the employee has the authority from the employer to perform, the employer is bound though the employee is forbidden to perform the particular act. If the act is not within the class of service, the employer is not bound." 124 Ga. App. at 240.

The repair work by defendants' employees which was the cause of the fire was one of the "classes" of work being performed by the defendant. In *Porter v. Jack's Cookie Co.,* 106 Ga. App. 497, 502 (127 SE2d 313), this court set forth the test that such work was within the "class" of work if

"the work the employee was performing *was that for which he was hired. . .*" "Thus, even though the employee may have violated his instructions or exceeded in some respects the boundaries of his authorized acts, the master is still bound where the disobedience is not such as to take him out of the scope of his employment." *Southern Airways Co. v. Sears, Roebuck & Co.,* 106 Ga. App. 615, 620 (127 SE2d 708). "Where the employee is doing an act within the class of service for which he is employed, does the fact that he is performing it at a time when he is forbidden to perform it take him out of the scope of his employment? We think it does not." *Porter v. Jack's Cookie Co.,* 106 Ga. App. 497, 502, supra.

Moreover, an equally applicable test is the basic one set forth in *Evans v. Caldwell,* 52 Ga. App. 475 (2), supra: "'A master is responsible for the tortious acts of his servant, done in his business and within the scope of his employment, although he does not authorize or know of the particular act, or even if he disapproves or forbids.' This is so because the test of the master's responsibility for the acts of his servant is not whether such act was done in accordance with the instruction of the master to the servant, but whether it was done in the prosecution and in the scope of the master's business." Accord, Philadelphia & Reading R. Co. v. Derby, 55 U. S. 468, 486 (14 LE 502) (1852); *Crane Auto Parts &c., Inc. v. Patterson,* 90 Ga. App. 257, 260 (82 SE2d 666); *Huddle House, Inc. v. Burke,* 133 Ga. App. 643 (1) (211 SE2d 903), cert. den.

In the instant case the defendants' employees were acting within the scope of their employment and in the prosecution of their master's business. They were plumbers. Their master's business was installation and repair of plumbing, and they were engaged in plumbing repair work at the time of the fire in question. The fact they were not permitted to make repairs without prior approval and supervision is of no consequence as to their negligence. As we held in *Evans v. Caldwell,* 52 Ga. App. 475, 479 (184 SE 440), quoting Philadelphia & Reading R. Co. v. Derby, 55 U. S. 468, 487, supra: "[W]e find no case which asserts the doctrine that a master is not liable for the acts of a servant in his employment, when the particular act causing the injury was done in disregard of

general orders or special command of the master. Such a qualification of the maxim of respondeat superior would, in a measure, nullify it."

After verdict the evidence is construed in its light most favorable to the prevailing party, and every presumption and inference is in favor of the verdict. *Mathis-Akins Concrete &c. Co. v. Tucker,* 127 Ga. App. 699, 700 (1) (194 SE2d 604). And, if there is any evidence to support it, this court will not disturb it. *Pinkerton & Laws Co. v. Atlantis Realty Co.,* 128 Ga. App. 662, 665 (197 SE2d 749). The findings of fact and conclusion of law as to liability of the defendants are amply supported by the evidence of record.

2. Defendant's allegation that plaintiffs' failure to offer evidence as to reasonableness of motel expenses, requires disapproval of that amount, is without merit. Defendant could have cross examined the plaintiffs as to such expenses if he seriously contested their necessity or their reasonableness. A failure to object to admission of this evidence on the basis of "no showing of reasonableness" is a waiver of such objection. *Johnson v. Rooks,* 116 Ga. App. 394, 398 (157 SE2d 527). Accord, *Lamon v. Perry,* 33 Ga. App. 248, 250 (1) (125 SE 907). It is within the province of the fact finder to consider the evidence and to determine whether the amount was reasonable. *Georgia R. &c. Co. v. Tompkins,* 138 Ga. 596, 603 (75 SE 664); *Limbert v. Bishop,* 96 Ga. App. 652, 655-656 (5) (101 SE2d 148); *Smith v. Davis,* 121 Ga. App. 704, 708 (5) (175 SE2d 28); *Neloms v. Carmichael,* 125 Ga. App. 331, 332 (187 SE2d 555).

3. Enumerations of error 13 through 44 deal with the measure of damages awarded the plaintiffs. Defendant contends plaintiffs' opinion as to the value of their property was not competent as they "gave no reason whatsoever for the values. . .assigned to the various items of personal property, except the cost price." We agree.

Consistency was not the forte of plaintiffs' testimony as to value. Evidence was introduced as to the purchase price of some items and the purchase date of other items, but not the purchase price and date of all items. There was testimony as to market value of most items before and after the fire, but not all items. Salvage value or the lack

thereof was given on some but not all items. Without summarizing each of the five plaintiffs' testimony as to every item damaged or destroyed by the fire, we find that generally they testified to acquisition cost, a few of the acquisition dates, "reasonable market value" of most items immediately before and after the fire, and salvage value—if any, of the items after the fire. Such evidence fails to satisfy the test enumerated by this court in *Hoard v. Wiley,* 113 Ga. App. 328, 329 (1b) (147 SE2d 782) that: "An owner of property may not testify as to his opinion of the value of the property in a single or gross amount without 'giving his reasons therefor' or else showing that he has had 'an opportunity for forming a correct opinion.'" Although it is evident that an owner of personalty within his home has ample opportunity to form an opinion as to its value, is it a "correct" opinion as required by the Code? Code § 38-1709.

Opinion evidence, to have probative value, must be based upon a foundation that the witness "has some knowledge, experience or familiarity with the value of the property in question or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion. . .Absent this foundation, the opinion as to value is inadmissible as it is nothing more than an 'unsupported conclusion or guess of the witness.'" *Sisk v. Carney,* 121 Ga. App. 560, 563 (174 SE2d 456).

In the instant case, plaintiffs neither articulated a "basis" nor a "reason" for their opinion as to the value of their property. Defendant did not object to plaintiffs' testimony as to value but did subject each witness to a thorough and penetrating cross examination as to the accuracy of such opinion. The failure to object to opinion evidence on value will not prevent this court from considering such objection when raised for the first time on appeal. *Minit Chek Food Stores, Inc. v. Plaza Capital, Inc.,* 135 Ga. App. 110, 111 (217 SE2d 415).

As the opinions of the plaintiffs were not supported by facts as to the "reason" for them, they have no probative value and cannot support the findings of the trial court as to damages. *Hoard v. Wiley,* 113 Ga. App. 228, 333, supra; *State Hwy. Dept. v. Raines,* 129 Ga. App.

123, 125 (199 SE2d 96). However, although the evidence is insufficient to support the specific findings of the judge as to the total amount of damages, the evidence is sufficient to "support a finding that the [items] had some value" (*Sisk v. Carney,* 121 Ga. App. 560, 563, supra), which will require resolution of the issue of the total amount of damages owed to the plaintiffs. Cf. *Insurance Co. of N. A. v. Atlas Supply Co.,* 121 Ga. App. 1, 7 (172 SE2d 632).

*Judgments affirmed as to liability; judgments reversed and remanded for determination of the amount of damages. Deen, P. J., Stolz, Marshall, McMurray and Smith, JJ., concur. Bell, C. J., Clark and Webb, JJ., dissent.*

SUBMITTED APRIL 13, 1976 — DECIDED OCTOBER 8, 1976 — REHEARING DENIED NOVEMBER 2, 1976 —

*Savell, Williams, Cox & Angel, Edward L. Savell, William E. Zachary, Jr.,* for appellants.
*Andrews & Myers, Robert E. Andrews, W. Allan Myers,* for appellees.

WEBB, Judge, dissenting.

There appears to be little or no difference between Judge Quillian and myself as to the facts of this case and the controlling principles. We both proceed under the test approved by this court in *Evans v. Caldwell,* 52 Ga. App. 475 (184 SE 440) (1936), *Porter v. Jack's Cookie Co.,* 106 Ga. App. 497 (127 SE2d 313) (1962), and *Gann v. Mills,* 124 Ga. App. 238, 240 (183 SE2d 523) (1971), that "if the act is within the class of service which the employee has the authority from the employer to perform, the employer is bound though the employee is forbidden to perform the particular act. If the act is not within the class of service, the employer is not bound."

The difficulty comes in applying the test to the undisputed facts; and the question before the court is how closely the employer may circumscribe the class of authorized acts. On the one hand we can safely say that instructions not to perform negligent acts would be too

narrow, and this classification is universally held ineffectual. But on the other hand it seems no answer simply to say, though superficially appearing to do so, that the employers' business was plumbing, that the employees were plumbers and were engaged in plumbing work at the time of the fire.

It is clear that two classes of plumbing work were involved here — (1) installation of original plumbing in new buildings under construction under written contract for a fixed price, and (2) repair and maintenance work, when requested by the owner, on existing buildings on a labor and materials per-job basis, but only under close supervision and with the employers' prior specific approval of the employee in each instance. This distinction between unsupervised installation work and supervised repair work is neither arbitrary nor an afterthought to escape liability. The evidence is that use of a torch to make repairs on enclosed pipes in the completed and occupied buildings, where insulation, wiring, and other flammable and potentially hazardous materials were present, was more dangerous than the original installation of pipe in the framework of the buildings under construction; and for that reason the employees, at a meeting called for that very purpose, were instructed not to do that type of work without the employers' personal supervision or express authorization in each instance.

Thus it is my view that there was a reasonable basis for the classification here and that the employers should have been allowed to select the servants to perform this hazardous work. That principle finds expression in the cases holding an employer not liable for the negligence of an unauthorized substitute servant. As stated in *Carter v. Bishop,* 209 Ga. 919, 928 (76 SE2d 784) (1953), quoting from *Cowart v. Jordan,* 75 Ga. App. 855, 860 (44 SE2d 804) (1947): "The relationship of master and servant can not be imposed upon a person without his consent, express or implied. The defendant was free to select his own servant." And as this court said in *Cooper v. Lowery,* 4 Ga. App. 120, 121 (60 SE 1015) (1908): " 'Under the doctrine of respondeat superior, a master, however careful in the selection of his servant, is responsible to strangers for

their negligence committed in the course of their employment. The doctrine is at best somewhat severe, and, if a man is to be held liable for the acts of his servants, he certainly should have the exclusive right to determine who they shall be.' "

Since the employers were denied this right, they should not be held accountable for the very negligence which their broken rule was designed to prevent. I respectfully dissent.

I am authorized to state that Chief Judge Bell and Judge Clark concur in this dissent.