**Wanda Starr WRIGHT, Individually and as Administratrix of the Estate of James Lewis Wright, Plaintiff-Appellee,**

v.

**SOUTHERN BELL TELEPHONE COMPANY, Defendant-Appellant.**

No. 77-2208.

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1979.

Rehearing and Rehearing En Banc Denied Jan. 3, 1980.

---

William R. Waldrop, John M. Gayner, III, Brunswick, Ga., for defendant-appellant.

C. Robert Faucette, Spartanburg, S. C., Grayson P. Lane, Brunswick, Ga., for plaintiff-appellee.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal involves the tragic death of a homeowner who was killed when the temporary blocks supporting his mobile home gave way and the home collapsed upon him. Specifically, we are asked to decide whether the telephone company may be held liable for this death, assuming that the homeowner was under the house at the request of the telephone company's employee. After careful consideration of this question, we reach the conclusion that there is no legal basis for recovery against the phone company. Accordingly, we reverse the judgment entered in favor of the plaintiff.

In May of 1975, Wanda and James Wright made arrangements to lease a mobile home from Southern Sales & Service, a mobile home dealer located in Waycross, Georgia. When the mobile home was delivered to the Wrights, it was not permanently secured. Instead, it was supported by a single jack which was attached to the tongue of the mobile home and which rested solely on a concrete block.

In preparing to move into the mobile home, Mr. Wright contacted Southern Bell and asked that three telephones be installed. On the morning of May 19, 1975, Southern Bell's employee, Vivian Cox, arrived at the Wright's home and was instructed by Mr. Wright where each phone was to be placed.

The Wrights requested that one of the phones be installed in an inner wall in the kitchen. In order to install this phone, Cox drilled a hole through the kitchen floor, inserted a wire into the hole, and went underneath the mobile home to pull it through. She was unable to pull the wire through, so she returned to the kitchen and repeated the procedure a second time, but was again unsuccessful in pulling the wire through.

At this point, Mr. Wright crawled underneath the home to assist Cox by attempting to pull the wire through the hole while she pushed it through from the kitchen. While Mr. Wright was under the mobile home, the concrete block which was underneath the tongue and jack at the front of the home broke or cracked, and the mobile home fell upon him causing his death.

Ms. Wright brought an action, both on her behalf and as administratrix of her husband's estate, against Southern Bell in the District Court for the Southern District of Georgia, seeking to recover damages for the wrongful death of her husband and for medical and funeral expenses. After the first trial was declared a mistrial, the jury in the second trial returned a verdict in Ms. Wright's favor in the amount of $65,000.00. Southern Bell moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. This motion was denied by the district court, and Southern Bell now appeals.

The thrust of Ms. Wright's case is relatively simple. She alleges that Cox, by virtue of her vast experience in installing telephones in mobile homes, was fully aware of the dangers inherent in working under mobile homes that were only temporarily secured.[1] Thus, because of Cox' superior knowledge in such matters, she owed a duty to the decedent to warn him of the dangers of going underneath his mobile home. By asking Mr. Wright to go under the home without warning him of the danger of doing so, Ms. Wright contends, Cox was negligent and her negligence proximately caused Mr. Wright's death.

Southern Bell advances several persuasive arguments to support its contention that it cannot, as a matter of law, be liable for the death of Mr. Wright. We need look no further than the first one to conclude that Southern Bell cannot be liable in this case.[2]

As we have already illustrated by our synopsis of the plaintiff's case, she attempts to impose liability on Southern Bell under the doctrine of *respondeat superior*. A review of the complaint, pre-trial order and evidence presented at trial shows that the only acts or omissions complained of are those of Cox. Under Georgia law, before a master may be held liable for the negligent acts of its servants, the servant must have been acting both within the scope of his employment and in the prosecution of the master's business. *Selman v. Wallace*, 45 Ga.App. 688, 165 S.E. 851 (1932).

Southern Bell is willing to concede that Cox' request for assistance may have been in the prosecution of Southern Bell's business, but it vigorously denies that Cox acted within the scope of her employment in enlisting the aid of Mr. Wright.[3] In *Huddle House, Inc. v. Burke*, 133 Ga.App. 643, 647, 211 S.E.2d 903, 907 (1974), the Georgia Court of Appeals held:

> No employee has power to employ another to assist him in his work without express authority; and if he does so, he is acting without the scope of his authority.

In *Burke* the employee had enlisted the help of a customer, a young boy, who was injured as he was removing ice from the storage area of an ice machine. The Georgia Court of Appeals held, *inter alia*, that the employer could not be liable for the acts of its servants in enlisting the help of the customer since they acted outside the scope of their employment in doing so. Southern Bell argues that a similar conclusion is especially appropriate in this case because Southern Bell's own regulations specifically forbid employees from requesting the assistance of customers in the performance of company work. In view of this controlling authority, we must agree with Southern Bell that it cannot be responsible for the negligent acts of Cox because she acted outside the scope of her employment in asking the decedent to assist her. *See also Waller v. Southern Ice & Coal Co.*, 144 Ga.

---

1. Ms. Wright relied heavily on the following regulation in Southern Bell's Service Manual to show an awareness by Southern Bell and its employees that working under such mobile homes could be dangerous:

   Wiring runs should be attached to the outer edge of the outrigger so that it will not be necessary to crawl under the mobile home. Bell System Practices Station Service Manual § 461–220–100, ¶ 4.11.

2. Southern Bell contends that Cox' request for assistance could not, in any event, be the proximate cause of Mr. Wright's death. *See Standard Oil Co. v. Harris*, 120 Ga.App. 768, 172 S.E.2d 344 (1969). The cause of the accident, Southern Bell argues, was a dangerous condition in the premises—the faulty support to the tongue of the mobile home. It is well settled in Georgia that the owner or occupier of premises

is responsible for defects in those premises. Ga.Code Ann. § 105–401. Because neither Southern Bell nor its employee had assumed dominion or control over the premises, it is urged that Southern Bell cannot be held liable for injuries caused by a defect in the premises under the control of Mr. Wright. We are much impressed by this argument, but need not decide the issue in view of our conclusion that Cox acted outside the scope of her employment.

3. At trial Cox denied asking for Mr. Wright's assistance. In view of the jury verdict in favor of the plaintiff, however, both parties agree that we must assume for the purposes of deciding this case that Cox did in fact request Mr. Wright's help.

695, 87 S.E. 888 (1916); *Carter v. Bishop,* 209 Ga. 919, 76 S.E.2d 784 (1953).

The district court felt that this case is controlled by *Higgins v. D. & F. Electric Co.,* 110 Ga.App. 790, 140 S.E.2d 99 (1964). *Higgins* presented a different situation, both substantively and procedurally. In *Higgins* the defendant was responsible for electrical wiring on the premises and knowingly permitted or directed another person, who happened to be the owner, to come in direct contact with the electrical wiring. This would be similar to the case at bar if the telephone company employee had, knowing of the presence of Mr. Wright beneath the trailer, drilled or driven some object through the floor striking him. Further, when *Higgins* was decided, procedures for testing the legal sufficiency of a cause of action in Georgia were somewhat different from the procedures currently utilized. In *Higgins,* the legal sufficiency of the plaintiff's complaint was tested by the filing of a general demurrer. For the purpose of ruling on the demurrer, the facts alleged in the plaintiff's petition were accepted as true. Whether true or not, the petition in *Higgins* alleged that, when the electrical contractor's employee caused Mr. Higgins to drill into the energized electrical line, he did so within the scope of the authority conferred upon him by the defendant. Thus, when the Court of Appeals ruled, it held only that a cause of action was stated; it did not question the correctness of the allegations. In the present case, Cox was acting outside the scope of her employment; this distinction renders any reliance on *Higgins* inappropriate.

The plaintiff points to the court's conclusion in *Higgins* that the homeowner was not a "volunteer" and argues that the decedent was likewise not a volunteer in the present case. We fail to see the relevance of this point. The decedent's status as a volunteer would become important if the plaintiff's theory of recovery was that, at the time of the accident, her husband had been a servant of Southern Bell. *Southern*

*Railway Co. v. Benton,* 57 Ga.App. 520, 523, 196 S.E. 256 (1938). But here, the plaintiff's theory of recovery is that Southern Bell is liable under the doctrine of *respondeat superior* for the negligence of its employee; Ms. Wright does not contend that Southern Bell breached a duty arising out of the master-servant relationship. Under the plaintiff's theory of the case, Southern Bell can only be liable for any negligence of Cox if she were acting within the scope of her employment and, as we have already seen, Cox was acting outside the scope of her employment in enlisting the aid of Mr. Wright.

The result we reach is not at odds with the established rule in Georgia that the fact that a servant disobeys the instructions of his master does not insulate the master from liability for the servant's negligence. *See Porter v. Jack's Cookie Co.,* 106 Ga.App. 497, 127 S.E.2d 313 (1962); *Evans v. Caldwell,* 52 Ga.App. 475, 184 S.E. 440 (1936), *aff'd,* 184 Ga. 203, 190 S.E. 582 (1937). As the court in *Porter* specifically recognized, a violation of instructions may constitute a departure from the scope of employment. 106 Ga.App. at 501, 127 S.E.2d 313.

Because we conclude that Southern Bell cannot be liable for the negligence of Cox, we reverse the district court's decision to overrule Southern Bell's motion for judgment notwithstanding the verdict. Accordingly, judgment should be entered for Southern Bell.

REVERSED.